[No. 6093. Decided July 31, 1906.]

## S. A. WOODS MACHINE COMPANY, *Appellant,* v. F. W. WOODCOCK, *Respondent.*[1]

TROVER AND CONVERSION—WRONGFUL SALE. In an action against an agent for the conversion of a machine sold and accounted for by the agent, a nonsuit is properly granted on the ground that the agent's sale was authorized or ratified, and his possession not wrongful, where it appears that, upon being succeeded as regular agent for plaintiff by one Y, with whom he officed, he was empowered to continue to make sales as theretofore, consignments to be paid for on delivery, and to assist Y in making sales; that the machine, shipped to Y, was received, stored and insured by defendant, who immediately notified Y and the plaintiff of such disposition, to which no objection was made, and some months later, upon Y's authorization, defendant sold the machine, notified Y, who made no objection except as to the application of the proceeds; that defendant accounted to the plaintiff for the proceeds of the sale, less commissions, freight and insurance, and that plaintiff retained the payment, as part recovery "for the value of the machine converted to your own use."

SAME—PRINCIPAL AND AGENT. Where an agent's possession is not wrongful and he has authority to sell, he is not liable to the owner for a conversion in making a sale.

PRINCIPAL AND AGENT—AUTHORITY—RATIFICATION. An owner of property sold by an agent under authority to sell ratifies the sale by accepting part of the purchase money upon a full statement by the agent.

SAME—PLEADING—VARIANCE. In an action for wrongful conversion, where the proof as to the conversion fails, the plaintiff cannot amend to show an entirely different cause of action

1Reported in 86 Pac. 570

Appeal from a judgment of the superior court for King county, Gilliam, J., entered March 6, 1906, in favor of the defendant, granting a nonsuit at the close of plaintiff's case, in an action of trover and conversion. Affirmed.

*Aust & Terhune,* for appellant.

*Kerr & McCord* and *W. L. Waters,* for respondent.

HADLEY, J.—This is an action for the alleged conversion of a machine known as an "inside moulder." The answer, as amended at the time of the trial, denies that the plaintiff was in possession of the machine, and denies that the defendant without right disposed of the same, or converted it to his own use. It is admitted that the defendant sold and disposed of the machine, but alleged that he did so as the agent of the plaintiff, and that he received therefor, after deducting his commissions and expenses, the sum of $997.50, for which sum, prior to the commencement of this action, he accounted to plaintiff and paid over the same. The cause came on for trial before a jury, and, at the conclusion of the testimony submitted by the plaintiff, the defendant moved for a nonsuit, which was granted. Judgment was entered dismissing the action, and the plaintiff has appealed.

Appellant assigns error as to the ruling upon the motion for nonsuit. The evidence shows that appellant is a Massachusetts corporation, and a manufacturer of mill machinery. For some years respondent was engaged in selling appellant's machinery. In 1904 the respondent was so engaged, and he and one Youle, an admitted agent of appellant, occupied the same office rooms in Seattle. Witnesses testified to the effect that, after June, 1904, said Youle was appellant's agent in Seattle and for the surrounding country; that the arrangement with regard to respondent for the time following said month was that respondent should continue to sell machinery as he had theretofore done, but that appellant would ship on his order with sight draft attached to bill of lading, to be paid before delivery of goods, and not otherwise. They also testi-

fied that respondent was to receive the benefit of a fifteen per cent reduction from the list price upon such machinery, and that, if he assisted Youle in making sales, he was to receive such compensation as Youle should approve and recommend.

In August, 1904, appellant shipped to Everett, Washington, the machine in question. It was shipped in a car with a consignment of other machinery to the 'Weyerhauser Timber Company. It was testified that the moulder had attached to it a tag with Youle's name written upon it. Upon its arrival in Everett, the respondent received it, shipped it to Seattle, paid the freight charges, stored it in a warehouse, and covered it with insurance. Immediately afterwards, on the 17th day of September, 1904, he wrote the appellant, addressing it at Boston, and among other things said the following: "The car containing the Weyerhauser machines came in all O. K. I reshipped the grinder to the Larson Lumber Company, and had the moulder shipped to Seattle, and it is in my warehouse and fully covered by insurance." On September 30, 1904, and again on October 26, 1904, appellant responded to respondent's said letter of September 17, making reference to matters contained therein, but offering no complaint as to respondent's disposition of the moulder.

About the time the moulder was shipped to Seattle, respondent informed Youle what he had done with it. Youle testified that respondent told him of the shipment, and where it was stored, and that they then had an understanding that if Youle effected a sale of it, he would reimburse respondent for his freight and storage expenses, but if respondent sold it, there would be no charge for freight or storage; that soon afterwards respondent stated to him that he had an order for a moulder to go to China, and that he told respondent this moulder would fit that order; that later he asked him how his China order was coming on, and he replied that it was coming on all right; that he asked him how soon it would be ready for shipment, and he said it would be some time; that

meantime the moulder remained in respondent's possession, and he continued to pay storage and expenses. Later respondent sold the moulder to Snethlage & Company, of Shanghai, China, for the list price of $1,150.

At the trial the appellant read into the record, as a part of its evidence, the answers of the respondent to interrogatories propounded by appellant. In reply to interrogatories as to what were the circumstances of the receipt by respondent of the moulder, and as to what were the terms of its delivery, he said in effect that he had been the agent of appellant for a number of years; that the property was received by him in the ordinary course of business for sale in accordance with his contract with appellant; and that the terms of delivery were the usual terms under his contract with appellant. After receiving the returns from the sale of the moulder, respondent remitted to appellant the proceeds of the sale, less certain charges which he claimed were due him from appellant for commissions, freight, drayage, and insurance. A statement of account, showing the credits and charges as claimed by respondent, accompanied the remittance. Appellant received and retained the amount of the remittance, which was $417.84. It, however, informed respondent that it did not accept the draft in full settlement, but retained it as a part recovery of the amount of his obligation "for the value of the machine converted to your own use."

Respondent informed Youle that he had sold the machine on the order from China, and Youle says he demanded that he should settle for it. The testimony showed, however, that under the arrangement which was made in June, 1904, when Youle and respondent were together in appellant's office in Boston, respondent was to deal directly with appellant except in cases where he might assist Youle in making sales. Respondent had, months before the sale of the machine, notified appellant that he had it in his possession in his warehouse, and no objection thereto was made to him at any time by appellant. Under these circumstances, when Youle demanded

settlement on account of the moulder after its sale, respondent refused to settle with him, and told him he would settle with appellant. This was followed by the forwarding of the remittance and statement of account aforesaid. By the terms, of a contract between appellant and respondent, made in 1903, the latter was to receive fifteen per cent commission on sales made by him. The same arrangement as to commissions was carried into the contract of June, 1904. Youle testified at the trial that the last contract had been terminated before the sale of the moulder, by correspondence between the parties. Some correspondence bearing upon that subject was introduced; but other correspondence in evidence shows that respondent continued to forward his orders for machinery, and that his orders were acted upon in accordance with the contract.

From the evidence above stated, did the court err in granting the nonsuit? The action is one in tort for the wrongful and unlawful conversion of the machine. We think from the evidence that respondent was not wrongfully in possession of the moulder. He immediately notified appellant and, also, appellant's acknowledged agent that he held it. Both acquiesced in that disposition of it, and it so remained for months, each knowing that respondent was paying storage charges thereon, and appellant itself particularly having been informed that he had also had it insured. By an understanding between respondent and appellant's admitted agent, Youle, either of them had a right to sell it. It was at least disposed of by respondent in pursuance of that understanding, even if it can be said that appellant's own knowledge of the situation and its silence did not of itself authorize him to sell it. Respondent had authority to sell the machine, and he cannot therefore be held in an action in tort for its conversion. Moreover, appellant accepted and retained a part of the proceeds of the sale, and at the same time it received from respondent a full statement as to his application of the entire

proceeds. Under these circumstances appellant could not have maintained an action for the recovery from the purchaser of the machinery sold, for the reason that it was sold by authority, and for the further reason that, when appellant elected to retain a part of the proceeds, with full knowledge of all the facts as to the disposition of the entire proceeds, it must have ratified the sale. If an action could not be maintained for the recovery of the machinery from the purchaser because appellant both authorized and ratified the sale, for the same reasons respondent cannot be charged with a wrong in consummating the sale as a foundation of an action for conversion. If we should assume that the sale was made without authority in the first instance, then the following statement of principles, as applied to the further facts of this case, is particularly applicable:

"If a man has taken possession of property, and sold or disposed of it without lawful authority, the owner may either disaffirm his act and treat him as a wrong-doer, and sue him for a trespass or for a conversion of the property; or he may affirm his acts and treat him as his agent, and claim the benefit of the transaction; and if he has once affirmed his acts and treated him as an agent, he cannot afterwards treat him as a wrong-doer, nor can he affirm his acts in part, and void them as to the rest. If, therefore, goods have been sold by a wrong-doer, and the owner thinks fit to receive the price, or part thereof, he ratifies and adopts the transaction, and cannot afterwards treat it as a wrong." 1 Addison on Torts (Banks & Brothers' Ed.), § 52.

See, also, *Pierce v. O'Keefe,* 11 Wis. 188. From the testimony of Mr. Youle, it is apparent that he, in behalf of appellant, did not, when informed of the sale, complain of the sale itself. Indeed, he could not well do so since he had authorized respondent to sell the machine on this same order from China. The essence of his complaint and demand of respondent at that time was that the latter should settle with him for the proceeds of the sale.

"The result of the authorities may be said to be, that if the agent parts with the property in any way or for any pur-

pose not authorized, he is liable for a conversion; but if he parts with it in accordance with his authority, but sells it at a less price, or misapplies the proceeds, or takes inadequate security, he is not liable for a conversion of the property, but only in an action for damages on account of the misconduct." Mechem on Agency, § 477.

It will thus be seen that a mere misapplication of the proceeds of the sale, or the mere violation of instructions does not amount to a conversion.

"If the agent did not obey instructions, he might be liable upon a special count in case; but a conversion is a positive, tortious act. Mere *nonfeasance* or neglect of some legal duty, will not suffice to support trover, although it may constitute sufficient ground to maintain an action on the case." *Sturges v. Keith,* 57 Ill. 451, 11 Am. Rep. 28.

See, also, *Loveless v. Fowler,* 79 Ga. 134, 4 S. E. 103, 11 Am. St. 407.

Where the complaint is for a wrongful conversion of property, and the proof establishes another and different cause of action, there is a failure of proof of the cause of action alleged, and the plaintiff should be nonsuited. *Moore v. Mc-Kibbin,* 33 Barb. 246. In the last cited case the proofs having failed to establish conversion, an application was made to amend the complaint to conform to the facts shown. The application was denied on the ground that to have permitted the amendment would have changed the cause of action to one entirely distinct and separate from a cause of action arising from the conversion of property. The court observed:

"If the evidence had proved a conversion of the property, by some act of the defendant other than that alleged in the complaint, it would have been a variance, and amendable within the provisions of the code. But as it tended to establish a cause of action entirely different and distinct from the one alleged, and to disprove wholly the latter, it was just the case of a failure of proof of the allegation of the cause of action, in its entire scope and meaning. Although forms of action are abolished by the code, causes of action are not. They remain distinct and distinguishable as they ever were,

and ever must be, while legal rules regulate the conduct and dealings of men with each other."

No application was made to amend in the case at bar, but the above quotation is valuable here for the reason that it declares the principle that even under the code the causes of action remain distinct; that one cause of action may not be changed in the same action to another of an entirely separate and distinct nature; and that the action as brought must abide the proofs as applied to the nature, scope, and meaning of such an action.

Tested by the above rules, the court did not err in granting the nonsuit. The action is founded purely upon an alleged tort. The issue is one of conversion or no conversion. The evidence does not show a conversion, and the action must therefore fail.

The judgment is affirmed.

MOUNT, C. J., FULLERTON, DUNBAR, CROW, ROOT, and RUDKIN, JJ., concur.