[No. 22430. Department One. August 5, 1930.]

L. G. SWARTZ, *Respondent*, v. WILL STARKEY THEATERS
COMPANY, *et al.*, *Appellants*.[1]

*James A. Brown,* for appellants.

*Edward M. Connelly,* for respondent.

BEALS, J.—Prior to July, 1928, defendant Will
Starkey Theaters Company, a corporation, was the
owner of the "Rex Theater," a moving picture house
operating in the city of Spokane, and during that
month agreed to sell the same by contract of condi-
tional sale to C. G. Bowman and Jack Hoeft. These
purchasers falling behind in payments due under the
contract, their vendor, the corporation above named,
during the month of November, 1928, served upon
them a notice of forfeiture, upon receipt of which
Messrs. Bowman and Hoeft made the payments then
delinquent. They, however, again fell behind during
the month of December following, and another notice
of forfeiture was served upon them by their vendor.
At this time, there was unpaid upon the contract of
sale of the theater the sum of $6,100, in addition to
which the theater owed outstanding bills for current

[1]Reported in 290 Pac. 708.

operating expenses in an amount between $2,000 and $3,000.

When the December notice of forfeiture was served upon them, Messrs. Bowman and Hoeft requested defendant Will M. Starkey, the president and manager of defendant corporation, for time within which they might find a purchaser for the theater who would buy it at a price sufficient to pay the balance on the purchase price, as well as the other indebtedness. Mr. Starkey, the owner of fifty-one per cent of the capital stock of the corporation above named (which will hereinafter be referred to as the company), the other stockholders being his wife and his brother, evidently agreed to this proposition, and Messrs. Bowman and Hoeft retained the services of defendant Oliver T. Butterfield, a broker, in an attempt to procure a purchaser for the theater.

Plaintiff, L. G. Swartz, noticing an advertisement inserted in a newspaper by Mr. Butterfield, called upon him for the purpose of investigating the proposition, and was, by Mr. Butterfield, taken to the office of the company and introduced to Mr. Starkey. All the parties interested immediately thereafter met in the office of Mr. Starkey's attorney, where, after considerable negotiation, the following agreement was entered into:

"I hereby consent that the said Will Starkey Theaters Company, a corporation, may sell said theater to L. G. Swartz for the total price of nine thousand one hundred dollars ($9,100) and the said L. G. Swartz may take possession of said theater on December 24, 1928. It is expressly understood that, in selling the said theater to L. G. Swartz, the said Will Starkey Theaters Company and Will Starkey is not to become liable for any commissions on said sale, they to be taken care of as hereinafter set forth plus W. W. P. contract on change and film contract as of this date.

"I understand that Will Starkey Theaters Com-

pany, a corporation, has the principal sum of sixty-one hundred dollars ($6,100) due it plus one hundred dollars ($100) costs and approximately thirty dollars ($30) interest, and that said theaters company is to receive no other or greater portion of the aforesaid sum of ninety-one hundred dollars ($9,100), the balance of said ninety-one hundred dollars ($9,100) to be applied on outstanding indebtedness of Bowman and Hoeft while operating said theater, including commissions on the aforesaid sale, and if any over-plus the same to be distributed to C. G. Bowman and Jack Hoeft as their interests appear, with the express understanding that, if this said over-plus is not sufficient to pay all outstanding indebtedness, nothing herein contained shall be construed to make the Will Starkey Theaters Company, a corporation or Will Starkey liable in any sense for any portion thereof and pay T. Butterfield $455 commission.

"Mr. Swartz is paying one thousand dollars ($1,000) in cash to Will Starkey on this date, this said sum to be used by Mr. Starkey in paying past due rentals and other indebtedness at the theater, which said sum is paid as earnest money, and the said Will Starkey agrees to give to Mr. Swartz a contract of conditional sale upon the same terms as that contract dated the 12th day of July, 1928. $2,000 to be paid Jan. 2, 1929.

"We further consent that the balance of money in excess of sixty-one hundred dollars ($6,100) and interest may be paid to Will Starkey or some disinterested person to be distributed by him or them toward the liquidation of outstanding indebtedness on said theater as of this date, and we and each of us agree to make and sign a bulk sales affidavit concerning said theater not later than December 26, 1928.

"Dated this 24th day of December, 1928.

"C. G. Bowman
"Jack Hoeft
"Will Starkey"

The theater was turned over to Mr. Swartz about six o'clock in the afternoon of December 24, the day the foregoing agreement was signed, and plaintiff paid

to Mr. Starkey the sum of $1,000, for which Mr. Starkey gave him a receipt as follows:

"Spokane, Washington, 12-24-28. Received of L. G. Swartz one thousand dollars to apply on $9,100 cost of Rex Theater, this $1,000 to be paid toward bills on theater as of this date. $2,000 to be paid Jan. 2, 1929. $1,000.                                    Will Starkey."

The morning of December 28, Mr. Swartz notified defendant Starkey and the company that he would not proceed further with the contract, and delivered to them a notice in form as follows:

"To WILL STARKEY THEATERS COMPANY and to WILL STARKEY:

"I hereby surrender to you the possession of the Rex Theater located at West 326 Riverside avenue in the city of Spokane, Washington, and hereby elect to forfeit my agreement to purchase as of December 24, 1928, and relinquish all my right, title and interest therein as of this date, you to take possession today.

"Dated this 28th day of December, 1928.

L. G. Swartz"

Thereupon the company took possession of the theater, operated it for two days, and then, according to plaintiff's contention, closed it down.

Plaintiff brought suit against the company, Mr. and Mrs. Starkey, and Mr. and Mrs. Butterfield for return of the $1,000 which he had paid, claiming that he had been induced to part with this sum by misrepresentations for which defendants were responsible. From a judgment in favor of plaintiff, ·the company and defendants Starkey appeal.

Appellants contend that the trial court erred in rendering judgment against them, and argue that evidence was improperly received as to certain statements made by defendant Oliver T. Butterfield, and that such statements were not made by Mr. Butterfield as agent of appellants, and that appellants were no

wise responsible therefor and should not be held liable because thereof.

It clearly appears from the testimony that respondent was taken by Mr. Butterfield to appellant Will M. Starkey, and that the proposition of respondent's contemplated purchase of the theater was discussed by all the parties in Mr. Starkey's presence, and that he participated, to some extent at least, in the general discussion. Respondent testified that he asked Mr. Butterfield why it was that Messrs. Bowman and Hoeft had been unable to make a success of the operation of the theater, and that Mr. Butterfield stated that one of the partners and a relative of his were helping themselves to money out of the cash drawer. Respondent further stated that he told Mr. Starkey of this statement by Mr. Butterfield, and that Mr. Starkey said that that was about the only way he could account for the fact that Messrs. Bowman and Hoeft were falling so far in debt.

It is evident that appellant Will M. Starkey, at the time of the negotiations with the respondent, knew that the theater was heavily in debt and that Messrs. Bowman and Hoeft had been unable to successfully operate it. While Mr. Butterfield was retained by Messrs. Bowman and Hoeft in an attempt to salvage something out of the wreck, the evidence clearly preponderates in favor of respondent's contention that appellant Starkey knew of at least some of the representations that Mr. Butterfield was making to respondent to induce him to agree to purchase the theater, knew that these representations were false, and acquiesced by both words and conduct in the all-too-favorable explanation of the situation, to such an extent at least that appellants are in law liable to respondent for the return of the money paid to them by respondent.

Appellant Will M. Starkey signed personally the receipt for this money, and cannot now, in an action against him for the return thereof, shelter himself behind the fact that Mr. Butterfield was not primarily his agent. The testimony indicates that Mr. Starkey and the company had taken over the theater and simply allowed Messrs. Bowman and Hoeft an opportunity to see if they could find a purchaser who would pay enough to clear the indebtedness and possibly allow them a little something for their supposed equity. As no controversy was presented between Messrs. Bowman and Hoeft, on the one part, and appellants, on the other, and as no questions between these parties were submitted in the case at bar, no adjudication concerning these matters was, or should have been, made, but, in consideration of the entire record, we do not hesitate to hold that the trial court was correct in deciding that appellants were liable to respondent.

This court, in the case of *Lemcke v. Funk & Co.*, 78 Wash. 460, 139 Pac. 234, Ann. Cas. 1915D 23, said:

"There was sufficient evidence from which the jury might have found, and doubtless did find, that Benson secured the listing with the appellant of the Newlands ranch through information received from Mrs. McOmber, and under an agreement to divide any commissions received with her. The appellant, having accepted the benefit of this transaction consummated through Benson's holding himself out as representing the appellant, would be estopped to deny the agency while retaining the benefit. When it took the listing of the Newlands property, it took it *cum onere*. . . .

"It is elementary that a principal who, with knowledge, accepted the benefits of a transaction conducted by an assumed agent, is deemed to have ratified it *in toto*. Tiffany, Agency, p. 65. It is also familiar law that it requires much less positive action on the part of a principal to ratify transactions as to third persons than as in favor of the assumed agent himself. Mere silence and inaction are usually held sufficient."

The decisions of this court in the cases of *Curtis v. Janzen*, 7 Wash. 58, 34 Pac. 131; *Allen v. Olympia Light & Power Co.*, 13 Wash. 307, 43 Pac. 55; *Woods Machine Co. v. Woodcock*, 43 Wash. 317, 86 Pac. 570, also support respondent's contention that the judgment of the trial court in the case at bar was correct. Other authorities are referred to in the opinion of Judge Ellis in the case of *Lemcke v. Funk & Co.*, *supra*.

It is true, as contended by appellants, that proof of fraud must be clear, cogent and convincing *(Forsyth v. Davis*, 152 Wash. 595, 278 Pac. 676), and that to be actionable, fraudulent representations must be as to existing facts and cannot be predicated upon promises or statements as to future performance, in support of which proposition appellants cite *Lundgren v. Spencer*, 154 Wash. 254, 282 Pac. 58. These decisions are not controlling in the case at bar, which must be determined upon other principles than those upon which the cases cited by appellants were decided.

This court, in the case of *Williams v. Modern Food Stores*, 154 Wash. 358, 282 Pac. 203, in an action for rescission based upon alleged false representations and fraud, affirmed the judgment of the trial court in favor of plaintiff and held that defendant was liable to plaintiff because of false representations made by a person to whom the president of defendant company had referred plaintiff for information.

Where the testimony is conflicting, the trial court had the advantage of seeing and hearing the witnesses and could better determine as to who was telling the truth than can we from a reading of the record.

We are convinced that the judgment appealed from was right and the same is hereby affirmed.

MITCHELL, C. J., PARKER, TOLMAN, and MILLARD, JJ., concur.