[No. 29885. *En Banc.* June 19, 1947.]

CAMILLA M. KNATVOLD, *Respondent,* v. E. A. RYDMAN *et al.,*
*Appellants.*[1]

[1]Reported in 182 P. (2d) 9.

*Fred M. Bond,* for appellants.

*F. W. Loomis,* for respondent.

HILL, J.—Respondent and appellant E. A. Rydman entered into the following contract:

"THIS AGREEMENT, dated this 23rd day of March, 1943, by and between Camilla M. Knatvold and E. A. Rydman, WITNESSETH:

"That said Rydman will move the oysters from B129, B130 and B131, to B 98, and will harvest the same within the next two years. Rydman will furnish all equipment and labor and the gross proceeds from said oysters will be divided fifty-fifty.

"That said Rydman will break up and scatter the oysters on B61 and 62, furnishing labor and equipment and that said oysters will be harvested within the next two years on a fifty-fifty gross basis.

"It is agreed that Rydman may harvest any oysters now mature from B98 and B61 and B62 this spring; also any oysters now ready for the market on A90.

"It is agreed that Rydman is to receive 10% of the proceeds from any seed sold on the beds during 1944, and he is to supervise and check same.

"Dated at Seattle, Washington, this 23rd day of March, 1944.                    Camilla M. Knatvold [signed]
                                          "E. A. Rydman [signed]"

Thereafter, on October 24, 1944, respondent advanced four hundred dollars to appellant E. A. Rydman to aid him in purchasing a boat and bateau, which money was to be repaid in ninety days, with interest at four per cent.

In May, 1945, respondent commenced this action against appellants E. A. Rydman and Jane Doe Rydman, his wife. He will hereafter be referred to as though he were the only appellant.

To summarize a very lengthy amended complaint, respondent alleged, for a first cause of action, the execution of the contract of March 23, 1944; that it was understood and agreed that the oysters on tracts B-129, B-130, and B-131 were to be moved to B-98 immediately following the execution of the contract referred to, and that the moving contemplated the proper breaking up and planting of the same; and that it was further understood and agreed that the breaking and scattering of the oysters on B-61 and B-62 was, likewise, to be done immediately following the ex-

ecution of the contract. She further alleged that none of the work had been done by the appellant, although he had frequently been requested to proceed therewith; that, because of his failure to perform what was, to her, the principal consideration for the contract, she gave notice, on March 5, 1945, that the contract was terminated and canceled, and demanded an accounting and payment in full for all oysters which had been removed. She alleged, further, that he threatened to continue to sell oysters from her property; that he had accounted to her for only $1,068.25 of the $11,304.50 he had received from the sale of oysters from her property; and that he was unable to pay her any appreciable part of the amount due her.

As a second cause of action, she alleged the advance of four hundred dollars for the purpose and on the terms above referred to; that it had not been repaid; and that he had sold the boat (the bill of sale for which had been taken in her name as security) without her knowledge or consent, and had "appropriated the proceeds to his own use and benefit."

In her prayer, she asked that the court adjudge that the agreement of March 23, 1944, had been terminated and that the appellant had no further interest therein; that he be restrained from interfering with her oyster beds; that he be required to produce his books and furnish an accounting of all his transactions under the contract; and that she have judgment for $10,236.25, or such other sum as might represent the proceeds from his sales of oysters from the beds owned by her.

The appellant answered, denying any violation of the contract, alleging a waiver of his failure to perform, and also setting up three counterclaims.

The trial court made extensive findings of fact, including findings that the "real and principal and practically the only consideration" for the contract dated March 23, 1944, was the moving, breaking up, and scattering of the oysters as provided for in the contract (this being the only thing of any substantial value to respondent which appellant was required to do thereunder), within a reasonable time

from the date thereof; that appellant had done none of that work; that respondent had the right to and did cancel the contract on March 5, 1945; that appellant had sold oysters belonging to respondent, for which he had received $11,464.50, of which $5,732.25 belonged to the respondent; that only $1,068.25 of this amount had been paid to her prior to her cancellation of the contract on March 5, 1945; that she was entitled to interest at six per cent per annum on the balance, to wit, $4,664, from March 5, 1945, to August 8, 1945, on which date and during the course of the trial, an additional $1,225.90 was paid to her; and that she was entitled to interest of six per cent per annum on the balance of $3,438.10 from August 8, 1945, until paid.

The trial court further found that there was due four hundred dollars on the second cause of action, with interest at four per cent per annum from October 24, 1944; that the boat and bateau were still in the possession of appellant; and that the bill of sale was in the name of respondent as security for the sum advanced.

From these and other findings, the court concluded that the contract of March 23, 1944, was properly terminated and canceled; that the respondent was entitled to a judgment of $3,438.10, with interest at six per cent per annum from August 8, 1945, together with interest at six per cent on $4,664 from March 5, 1945, to August 8, 1945, on her first cause of action; and to four hundred dollars plus interest at the rate of four per cent from October 24, 1944, on her second cause of action, which amount was a lien on the boat and bateau for the purchase of which the four-hundred-dollar advance had been made. Judgment was entered for the respondent in accordance with these findings and conclusions.

The appellant makes twenty-six assignments of error, the last one of which is divided into four parts, (a), (b), (c), and (d). We will now dispose of these assignments of error seriatim.

■ *Assignment of error No. 1.* The trial court erred in overruling appellant's demand for a bill of particulars of the alleged amount, $11,304.50, for the sale of oysters.

The information sought was peculiarly within the knowledge of the appellant, as he had made the sales. There is no merit in this assignment of error.

■ *Assignment of error No. 2.* The trial court erred in overruling appellant's demurrer to the amended complaint.

Appellant cites, without argument, the case of *Wiegardt v. Becken,* 8 Wn. (2d) 568, 113 P. (2d) 60, to support his statement that the amended complaint did not state a cause of action. That case held, in an action for an accounting, that a plaintiff must allege a prior demand for an accounting and the refusal of the defendant to account. Such a demand was contained in the notice of cancellation of contract, dated March 5, 1945, which was set out in the amended complaint; and the refusal of the defendant (appellant) could readily be inferred.

■ Appellant's principal contention here is that there was a misjoinder of a contract and a tort action, his position being that the second cause of action was for the conversion of the boat and bateau. That cause of action was clearly to recover the four hundred dollars advanced for the purchase of the boat and bateau, and the allegation relative to his having sold the boat and appropriated the proceeds to his own use was surplusage and did not make the cause of action sound in tort.

*Assignments of error Nos. 3 to 16, inclusive.* The trial court erred in making findings of fact Nos. 3 to 10 and 12 to 17, inclusive.

■ The assignments that the trial court erred in making fourteen findings of fact, without any attempt to show wherein the findings were erroneous or lacked evidenciary support, is an invitation to us to search the record and see if we can find any error. It is not our function or duty to search the record for errors, but only to rule as to errors specifically claimed. *Bristol v. Streibich,* 24 Wn. (2d) 657, 167 P. (2d) 125. In that case, the court said:

" '4. The court erred in signing and filing the Findings of Fact proposed by the plaintiff.'

"In what respect? Here, again, the burden is put upon

the court of searching through the findings to see if, perchance, it can locate some error or errors therein. It is the appellants' duty, in assigning error in the findings, to point out the portion or portions thereof which they claim to be erroneous."

However, a study of the record convinces us that there was ample evidence to support every finding of fact made by the trial court except, possibly, that part of No. 12 where, by what is really a conclusion of law, the court found or concluded that the respondent was entitled to only one half of the $11,464.50 which the appellant had received from the sale of her oysters, or $5,732.25. We question whether appellant was entitled to so generous a compensation for doing practically nothing. This error, if any, was not prejudicial to appellant but was definitely beneficial. (Nor can we tell just how the trial court arrived at the figure of $11,464.50, but appellant seems content to accept that figure.)

*Assignment of error No. 17.* The trial court erred in making conclusion of law No. 1, which reads as follows:

"That the plaintiff is entitled to judgment declaring and decreeing that the relationship between the plaintiff and the defendants was that of owner and share cropper; that the defendants breached the said contract set out in the Complaint of plaintiff, which contract was dated March 23, 1944; that said contract has been legally terminated and cancelled and that the defendants and each of them have no further interest therein or thereunder."

We do not specifically approve that part of the conclusion which states that the relationship between the parties was that of owner and share cropper. We do not conceive that such a conclusion is material. If that portion of the conclusion was erroneous, and that we do not decide, it was not prejudicial to the appellant. The conclusion that the respondent had the right to cancel and terminate the contract followed from the finding that the appellant had failed to break up and move the oysters, which was the principal benefit the respondent was to receive and was a vital part of the contract. *Hodges v. Price,* 38 Wash. 1, 80 Pac. 202;

*Dishman v. Huetter,* 41 Wash. 626, 84 Pac. 590; *Capital Sav. & Loan Ass'n v. Convey,* 175 Wash. 224, 27 P. (2d) 136.

Appellant insists that respondent consented to a postponement of the payments due her. She did consent to certain delays but nothing that would justify a failure to make payment on March 5, 1945, and it is only from that date that interest is charged.

■ Appellant likewise urges that respondent waived performance of the breaking up and moving of the oysters. The record is replete with his promises to perform that work immediately if she would not cancel the contract. He was a very "promising" young man but did not fulfill his promises. Everyone else who wanted to move oysters in 1944 seems to have been able to get it done. Appellant apparently wanted to sell respondent's oysters on a fifty-fifty basis but had no intention of fulfilling the onerous part of the contract. None of the delays in which respondent reluctantly acquiesced, on his assurance that he was doing the best he could, constitute a waiver of her right to cancel this contract on March 5, 1945.

■ *Assignments of error Nos. 18 to 20, inclusive.* The trial court erred in making conclusions of law Nos. 2, 3, and 4.

These conclusions of law had to do with the right to, and the amount of, the money judgment on the first cause of action and on the second cause of action, and the right to a judgment for costs.

As previously suggested, the only error, if any, is in conclusion of law No. 2, which had to do with the amount of recovery on respondent's first cause of action, by limiting the amount of her recovery to half the amount received by the appellant; and of this error, if any, the appellant cannot complain.

■ Appellant contends that the payment of $1,225.90 made during the trial had been held up by reason of notice given by the respondent to Holm and Bendiksen, who were buying the oysters from appellant, and that this was no fault of his; hence, that amount should not draw interest from March 5, 1945, to August 8, 1945. It very definitely

was his fault; had he carried out his promise made on February 19, 1945, to have all payments made direct to respondent, it would not have been necessary for respondent to give the notice he complains of.

The conclusions follow from the findings, and these assignments of error are without merit.

*Assignments of error Nos. 21 and 22.* The trial court erred in entering judgment canceling the contract and in granting money judgment on the first and second causes of action.

The judgment complained of is predicated upon the findings and conclusions, and there is no error of which appellant can complain; however, we do not approve that portion of the judgment which reads, "and that the relation between plaintiff and defendants created by said contract was that of owner and share cropper."

*Assignments of error Nos. 23, 24, and 25.* The trial court erred in refusing to dismiss the first cause of action, the second cause of action, and the "plaintiff's complaint on all matters."

Ample evidence having been introduced to sustain each cause of action, these assignments, likewise, are without merit.

■ *Assignment of error No. 26(a).* The trial court erred in refusing to grant appellant judgment for two hundred dollars and expenses spent for labor and plans getting ready to move oysters.

Appellant testified that, in the spring of 1944, he had a crew of men ready to start work on B-129 to remove the oysters therefrom to another tract, as provided in the contract, but he could not go ahead because of some question as to whether respondent had title to B-129, and he was thereby damaged in the sum of two hundred dollars.

The trial court made no specific finding on this claim of the appellant but did find

".  .  . that any offset or counter claim against the plaintiff which the defendant might assert under the evidence in this case is more than overbalanced by the money received and retained as his alleged share of oysters sold

under the contract dated March 23, 1944 for which as a result of his failure to do the breaking, scattering and moving provided in said contract he gave very slight consideration."

Quite apart from this finding, we have no hesitancy in saying that appellant has not established this counterclaim by a fair preponderance of evidence. His statements in support thereof stand alone. He presents no books, records, or corroborating testimony of any payments made to anyone. If he was unable to proceed on B-129, there was work to be done on B-130 and B-131, and on B-61 and B-62, but no satisfactory explanation is made as to why the men he claims to have had available were not put to work on those tracts. He never made any mention of any loss occasioned by the status of B-129 at the time the question first came up or at any time until after the contract was canceled.

There was no error in refusing to grant judgment for the appellant on this counterclaim.

■ *Assignment of error No. 26(b).* The trial court erred in refusing to grant to the appellant judgment of twelve hundred dollars, ten per cent of the amount of sales of oysters from other beds.

This counterclaim is based on that provision of the contract reading:

"It is agreed that Rydman is to receive 10% of the proceeds from any seed sold on the beds during 1944, and he is to supervise and check same."

It is conceded by respondent that she sold twelve thousand dollars worth of oysters off other tracts, but it is denied that any oyster seed was sold. Respondent also contends that the provision of the contract which we have just quoted related only to the tracts referred to therein and not to her entire holdings, which were much more extensive.

The trial court found

". . . that no oyster seed were sold by the plaintiff upon which the defendant was entitled to any credit or commission or at all."

It is not necessary to construe the contract. The finding that no oyster seed was sold by respondent is supported by the evidence. Appellant, having failed to sustain the burden of proving this counterclaim by a fair preponderance of the evidence, was not entitled to judgment thereon.

*Assignment of error No. 26(c).* The trial court erred in refusing

" . . . to make any allowance on payments to plaintiff from oysters on bed 68 and especially not paying any share of the $600 profit or one-half of the same."

This assignment has reference to a transaction which occurred prior to the execution of the contract of March 23, 1944. Finding of fact No. 15 tells the story succinctly:

"That about the 1st day of March, 1944 the plaintiff and defendant Rydman entered into a verbal agreement that the Defendant was to harvest and sell oysters from a certain tract described as B68 and to pay the plaintiff at the rate of 75¢ per bushel; that in pursuance of said agreement the defendant on account of oyster harvested and sold from said tract, paid to plaintiff $999.00 keeping and appropriating to his own use and benefit a like or similar sum from the proceeds of said oysters; That plaintiff and defendants were both mistaken as to the true ownership as to said B68 which did not as a matter of fact belong to the plaintiff and that plaintiff duly notified the defendant to that effect as soon as she learned of her mistake; that the defendant has never accounted for or paid to the true owner of said tract any sum whatsoever; that the defendant is not entitled to any credit or offset against the plaintiff except as and until settlement is made with the true owner."

Until such time as an accounting is made with the owner of B-68, any action on this counterclaim is premature, and the trial court was correct in refusing to permit any recovery by the appellant thereon.

*Assignment of error No. 26(d).* The trial court erred in dismissing each and all of the cross-complaints of the appellant.

All that has previously been said under No. 26, subds. (a), (b), and (c), disposes of this assignment of error adversely to appellant.

The judgment is in all respects affirmed, except as to the words "and that the relation between plaintiff and defendants created by said contract was that of owner and share cropper."

ALL CONCUR.

'Reported in 182 P. (2d) 62.