[No. 34888. *En Banc.* June 23, 1960.]

MANLEY L. SHOOK, *Respondent,* v. H. F. SCOTT *et al., Appellants.*[1]

[1]Reported in 353 P. (2d) 431.

*George C. Butler,* for appellants.

*Critchlow & Williams,* for respondent.

ROSELLINI, J.—In this action for rescission of a contract for the purchase of certain land, the plaintiff alleged that he was induced to enter the contract by the representations of the defendant H. F. Scott (hereafter referred to as Scott) that a well supplying water for the property was capable of producing seven hundred fifty gallons per minute and that one tenth of such production, or seventy-five gallons per minute, would be available to the plaintiff for use on the property covered by the contract and that, in any event, water in such quantities as to render the same suitable for the growing of crops would be available to the plaintiff.

A jury acting in an advisory capacity returned a verdict for the plaintiff. The court adopted the jury's recommendation, entered findings that the representations concerning the availability of water were false, and rendered judgment for the plaintiff. Error is assigned to these findings and to the conclusion that the representations were fraudulent.

■ The court made no finding regarding the capacity of the well. There was no evidence on this question other than the testimony of the plaintiff and of Scott. The latter testified that he had no personal knowledge of the well's capacity, but had heard that a test had been run which showed that it would produce about seven hundred fifty gallons per minute. The plaintiff testified that there was evidence in another action (the nature of which will be explained later in this opinion) that the capacity of the well was seven hundred fifty gallons or more per minute. Since the evidence showed other factors which accounted for the unsatisfactory water supply, the mere fact that the plaintiff was receiving less than seventy-five gallons per minute would not sustain an inference that the capacity was less than was represented by Scott.

The judgment, therefore, must rest upon the finding that Scott represented to the plaintiff that seventy-five gallons per minute, or a water supply adequate to irrigate the property, would be available to the plaintiff, and that this representation was untrue.

It was the testimony of the plaintiff that Scott did make this representation, when the plaintiff inquired about the water supply, and the court was entitled to believe it. The land in question was a portion of a tract which was developed by Scott's predecessor in title, one Berto. Water for the tract was furnished from a single well owned by Berto.

Under a contract with Berto, Scott was given an undivided one-tenth interest in the well, and the right to install and operate a pump and pipe line to his property, consistent with the rights of the owners of the other interests in the well. The contract further provided that Berto, himself, would install electric power, a pump, and two-inch pipe to the boundary of the Scott tract.

The plaintiff succeeded to these rights when he entered into the contract of purchase. This contract contained the following provisions:

"Sellers agree that as long as this contract is in force, purchasers shall have full enjoyment and use of the easements granted to Sellers by the contract with Fred G.

Berto and Vinta L. Berto, as recorded in office of Benton County Auditor, and upon payment of purchase price, will transfer and assign their interest thereto to purchasers. . . .

"The property has been carefully inspected by the purchaser, and no agreements or representations pertaining thereto, or to this transaction, have been made, save such as are stated herein."

The plaintiff planned to use the land for the growing of alfalfa. Scott had owned the property some two years when he sold it to the plaintiff, and had grown some "fair crops" of alfalfa on it. The plaintiff installed a sprinkler system for irrigation purposes, and, during the first year of his ownership, succeeded in growing three crops of alfalfa. In the meantime, one Gray, the successor of Berto, was beginning to interfere with the water supply. Exactly what was done in the beginning is not clear from the record, but eventually Gray and a Mr. Christian "destroyed the cut-off and riser" to this property, according to the plaintiff's testimony, and made it impossible for him to raise crops.

When the plaintiff first received notice that his use of the water might be curtailed, he complained to Scott, who made some unsuccessful attempts to get the problem satisfactorily adjusted and eventually brought suit against Gray, a suit in which the other owners, including the plaintiff, joined.

A decree was entered in that action ordering the defendant to make all necessary changes to meet the requirements of a water system adequate to furnish domestic and household water at sufficient pressure, and irrigation water in the amount of one tenth of the total output of the well "but not under pressure to operate a sprinkler system."

Thereafter, the plaintiff, being dissatisfied with the manner in which Gray was complying with this decree, moved the court for an order adjudging him in contempt. Upon a hearing, this motion was denied, and the court determined that the plaintiff was being furnished water "exactly as he contracted for such water." No appeal was taken from the judgment nor from the order. It was in this action, according to the plaintiff's testimony in the present action,

that the man who dug the well stated that it had a capacity of seven hundred fifty gallons or more per minute.

The plaintiff was not satisfied with the results of the action brought by Scott and the other owners against Gray. After its termination, he continued to complain to Scott; and when nothing more was done to increase his water supply, he brought this action for rescission.

As we have said, the court was entitled to believe the testimony of the plaintiff that Scott, in answer to a specific inquiry, had told him there would be adequate water for irrigation purposes and that if he did not receive an adequate supply, he, Scott, would refund his money. The court was also entitled to believe the plaintiff's further testimony that the supply was inadequate for his purposes. The question remains whether a statement of this kind can constitute a fraudulent representation.

 Fraud, as this court has often reiterated, must be proved by evidence that is clear, cogent and convincing. The necessary elements are stated in *Webster v. L. Romano Engineering Corp.*, 178 Wash. 118, 34 P. (2d) 428. The first essential is that the statement be a representation of an *existing fact*. The rationale of this requirement appears in *Nyquist v. Foster*, 44 Wn. (2d) 465, 268 P. (2d) 442, wherein the court said:

"It is helpful to consider the reasons supporting the usual rule that fraud can be predicated only upon representations of existing fact. Among the several reasons stated by authorities are the following: (a) A statement as to future performance is a 'mere estimate' of something to take place in the future; *Tacoma v. Tacoma Light & Water Co.*, 16 Wash. 288, 47 Pac. 738; (b) '. . . a representation that something will be done in the future, or a promise to do it, from its nature cannot be true or false at the time when it is made;' 23 Am. Jur. 799, 801, § 38; See, also, *Rankin v. Burnham*, 150 Wash. 615, 274 Pac. 98; and (c) ' . . . were the rule otherwise, any breach of contract would amount to fraud; and that to permit a rescission for fraud by one who has no ground for complaint except an unfulfilled promise—a broken contract—would obscure elementary distinctions between remedies, and tend to nullify the Statute of Frauds.' 51 A. L. R. 46, 61, Annotation."

The proper test to apply, in determining whether a representation pertains to an existing fact or is a mere expression of opinion or a promise, was set forth in that case in these words:

" . . . Where the fulfillment or satisfaction of the thing represented depends upon a promised performance of a future act, or upon the occurrence of a future event, or upon particular future use, or future requirements of the representee, then the representation is not of an existing fact. . . . "

In *Holland Furnace Co. v. Korth,* 43 Wn. (2d) 618, 262 P. (2d) 772, 41 A. L. R. (2d) 1166, we said that a statement that an article will meet the buyer's requirements will be regarded as an expression of opinion about something to take place in the future. See, also, *Lincoln v. Keene,* 51 Wn. (2d) 171, 316 P. (2d) 899.

On the other hand, a statement is one of existing fact if a quality is asserted which inheres in the article or thing about which the representation is made so that, at the time the representation is made, the quality may be said to exist independently of future acts or performance of the one making the representation, independently of other particular occurrences in the future, and independently of particular future uses or future requirements of the buyer. In *Nyquist v. Foster, supra,* we held that a statement by a dealer to a prospective buyer of an automobile trailer that its sidewalls would not warp, related to a then existing condition which inhered in the material at the time the statement was made, and it was therefore a representation of existing fact upon which fraud might be predicated.

■ Applying the tests set forth in that opinion, did the assertion that adequate water (or seventy-five gallons per minute) would be available to the plaintiff pertain to an existing fact, or was it a statement of opinion, or a prediction, or a promise? This statement, according to the evidence, was inspired by Scott's understanding of the capacity of the well, which so far as the evidence discloses, was correct. But whether the water would be made available to the plaintiff depended on the terms of the contract with

Berto (predecessor of Gray) and its future performance. Both parties knew the terms of the contract. Whether in its performance adequate water for the irrigation purposes of the plaintiff would be furnished, depended on the future acts of the promisor and the future requirements of the plaintiff. At best, the statement of Scott can only be construed as a warranty or guaranty that the contract would be performed, and that in its performance, seventy-five gallons per minute, an amount adequate for the plaintiff's needs, would be made available to him. As such, it was not a representation on which an action for fraud could be grounded.

Since there was no direct evidence that the capacity of the well was less than was represented by Scott, and this capacity was not disputed by the plaintiff, it can be inferred from the evidence he presented that the well was not utilized to its full capacity, or that under the Berto contract, Gray was not required to furnish water at a pressure sufficient to successfully operate the plaintiff's sprinkler system and did not do so. If either of these factors was the cause of the failure of the water supply, the plaintiff's loss was not occasioned by his reliance on a misrepresentation of fact on the part of Scott, but by his reliance on the latter's unfulfilled prediction or statement of opinion. Consequently, there is lacking the clear, cogent, and convincing proof of a false statement concerning an existing fact, which is necessary to sustain an action founded on fraud.

The evidence was that Scott did not actually know the capacity of the well, but relied upon hearsay. He testified that there had been plenty of water when he farmed the land, and there was no evidence to the contrary. Scott's actions after the plaintiff complained to him of the water shortage, were consistent with a belief on his part, held in good faith, that the plaintiff was entitled to and should receive an adequate water supply.

In *Vinneau v. Goede,* 50 Wn. (2d) 39, 309 P. (2d) 376, the seller represented that a well located on the land was an adequate water supply for all purposes, when in fact the water was not fit for human consumption and was in-

adequate for any purpose. In *Gronlund v. Andersson,* 38 Wn. (2d) 60, 227 P. (2d) 741, the court granted rescission where sellers of land represented, through their agent, that there was a sufficient water supply on the land, when in fact the well did not afford sufficient water. There was evidence that this condition existed prior to the sale of the land. In both of these cases, the sellers misrepresented then existing facts pertaining to the well in question; whereas here, the seller's only representation as to the condition of the well (that it had a capacity of seven hundred fifty gallons per minute) was not shown to be false. The plaintiff here complains, not because the well could not produce the amount of water which the defendant said it could, but because his promise to return the respondent's money if the water was not made available to him was unfulfilled. There was no evidence that the defendant misrepresented the terms of the contract under which the water was to be delivered, and in fact, as we have said, those terms were contained in a written contract which was assigned to the plaintiff and of which he had actual notice.

Courts in other jurisdictions which have considered representations similar to those involved in this action, have refused to hold such statements fraudulent. In *Wolleson v. Coburn,* 63 Cal. App. 315, 218 Pac. 479, a representation that "in the winter months when there is rain there will be plenty of water for the stock" was held to be merely an unfulfilled prediction or an erroneous conjecture as to a future event and not actionable. The court of civil appeals of Texas held, in *Lott Town & Improvement Co. v. Harper,* (Tex. Civ. App.) 204 S. W. 452 (affirmed 228 S. W. 188), that an oral guaranty by the seller of land that the land would be irrigated adequately by a canal company which would give the purchaser its contract to furnish water, would not support a defense of fraud in a suit by the holder of notes given for the price of the land. If the guaranty was construed as a promise on the part of the seller to furnish irrigation water, the court said, it could not be the basis of an action of fraud unless there was proof that it was made with no intention of keeping it. (There is in this

case no contention that the fraud of the defendant was in making a promise which he had no intention of keeping.) The averments of the cross-complaint were to the contrary, for in it were alleged in detail the efforts and steps taken by the seller to secure an adequate supply of water to the land.

The case is much in point, for not only was the fulfillment of the seller's prediction or promise dependent on the actions of a third party, as in this case, but the seller actively assisted the buyer in attempting to secure an adequate supply of water from the party obliged to furnish it, just as Scott did in this action.

Also, in *Mid-Continent Life Ins. Co. v. Pendleton,* (Tex. Civ. App.) 202 S. W. 769, a representation made by a seller of land that water would be on the land in sixty days was held nonactionable in the absence of an allegation and proof that the "promise" was made with the fraudulent intent of not keeping it. And, in *Morrison v. Koch,* 32 Wis. 254, it was held that a vendor's assurance that a dam would always in the future continue to furnish the full amount of power conveyed, could not be regarded as a fraudulent representation, though it proved to be erroneous, it being on its face a mere assertion of his opinion, and the purchaser having the same opportunity as the seller to form a judgment on the subject.

On the other hand, in *Shepherd v. Kendrick,* 236 Ala. 289, 181 So. 782, the court held actionable a representation by a vendor that the streams on the land conveyed were never dry and the water supply was permanent. There was proof in that action that the streams did in fact dry up during the dry season, and this was known to the seller. Justifiably, an actual fraudulent intent was found. In that case there was clearly a misrepresentation of an existing fact, the past condition of the streams during the dry season.

The principles applied in those cases are in accord with those laid down by this court. Their application to the evidence in this case compels us to conclude that the plaintiff failed to sustain the burden of proving that his purchase of the land was induced by fraud, as that term has been

defined by this court. The prayer for rescission, therefore, should have been denied.

The judgment is reversed.

WEAVER, C. J., MALLERY, HILL, and DONWORTH, JJ., concur.

FOSTER, J. (dissenting)—I dissent.

Shook, respondent, sued to rescind the sale of real property. The trial court granted rescission, from which Scott, the vendor, appeals.

The respondent purchaser bought the land for the purpose of raising alfalfa and so advised the appellant. The findings are that appellant Scott, in reply to inquiries of respondent, represented that a well, supplying water for a number of tracts in the area, produced seven hundred fifty gallons per minute, and that there was a covenant running with the land which entitled the purchaser to one tenth of that production, or seventy-five gallons per minute. It was further found that Scott represented that, in any event, enough water to grow crops would be available to the respondent purchaser.

The court found that the representations by appellant concerning the availability of water were false, and that they were made in disregard of their truth or falsity. The purchase was induced by such statements.

It is not for us to retry disputes of fact, but findings must be supported by substantial evidence. There is such evidence here. However, it is within the province of this court to review the conclusions of law deduced from the findings.

The trial court's findings should be sustained because (1) the respondent proved material misrepresentation which induced him to enter the contract, and (2) substantial failure of the bargained-for consideration is sufficient for rescission.

(1) The court's opinion is based and proceeds throughout upon the premise that this is an action for fraud, or that the rescission herein can be based only upon fraud. Such is clearly erroneous as a premise for decision, and, further, provides a basis for distinguishing cases upon which the

court relies. Respondent should not be limited to proof of fraud.

An action to rescind a contract is not limited to intentional fraud, but may also be based on false representations which were negligently or recklessly made, although believed by the declarant to be true. Such statements must, however, have materially induced the damaged party to enter into the contract. *Holland Furnace Co. v. Korth,* 43 Wn. (2d) 618, 262 P. (2d) 772, 41 A. L. R. (2d) 1166; *Gronlund v. Andersson,* 38 Wn. (2d) 60, 227 P. (2d) 741; *Lou v. Bethany Lutheran Church of Seattle,* 168 Wash. 595, 13 P. (2d) 20; *Lasman v. Calhoun, Denny & Ewing,* 111 Wash. 467, 191 Pac. 409.[2]

Therefore, the lack of a deliberate intention on the part of appellant Scott is not fatal to respondent's case. The gravamen of the action is the damage to the plaintiff re-

---

[2]It is unfortunate that most cases have rationalized decisions involving statements innocently or negligently made in terms of fraud.

"This clearly is twisting language out of its normal meaning. Misrepresentation there is in such cases. And there is deception. But fraud is not present if the speaker actually believes that what he states to be true is true. The fallacy lies in failing to recognize that belief, as a state of mind, is the same whether or not the belief conforms to the fact. An honest mistake in statement is not a falsehood even though the mistake is a foolish one which should not have been made because there were no reasonable grounds to support the belief. The misrepresentation is an innocent one [albeit perhaps a negligent one] and should be recognized as such. . . . Scienter is neither present nor required." 1 Harper and James, Law of Torts, 551, 553, § 7.7.

". . . it is obvious that much of the confusion in the law of misrepresentation arises from the failure to distinguish between three totally different sets of legal ideas and the principles of social policy from which these ideas derive. Unfortunately for the clear and expedient development of the law and for its understanding and rational exposition, most courts and many writers have treated all liability for loss in particular transactions caused by language which misrepresented the facts upon which the injured person formulated his judgment, as deceit or fraud. This practice of calling a thing 'fraud' or kindred names has resulted in stretching legal ideas to the point where their misapplication is likely to produce results completely out of line with the policy which the various legal principles are designed to promote." 1 Harper and James, Law of Torts, 532, 536, § 7.3.

Liability there may be in these cases, but the legal principle should fit the facts, rather than the facts being squeezed into a legal principle. See *Brown v. Underwriters at Lloyd's,* 53 Wn. (2d) 142, 332 P. (2d) 228 (1958).

sulting from the reliance he placed on defendant's false statements, whether those statements were intentionally deceitful or not. *George v. Bingham*, 113 Wash. 39, 192 Pac. 980; *Godfrey v. Olson*, 68 Wash. 59, 122 Pac. 1014; *Best v. Offield*, 59 Wash. 466, 110 Pac. 17.

. Appellant's representations as to the water available to plaintiff were clearly material. It is common knowledge that the most important factor in determining the value of land for agricultural purposes in the area in question is the availability of water for irrigation. The importance to Shook of the water supply is shown by his repeated inquiries prior to purchase.[3]

The major question for decision is appellant's contention that his representations were not of "existing fact," and, therefore, not actionable. Scott claims he merely expressed opinions as to future events.

It is settled law that false statements, in order to be actionable for either damages or rescission, must relate to preexisting or presently existing facts. Representations as to future events or promissory statements are regarded as matters of opinion, and, therefore, not actionable. *Nyquist v. Foster*, 44 Wn. (2d) 465, 268 P. (2d) 442; *Webster v. L. Romano Engineering Corp.*, 178 Wash. 118, 34 P. (2d) 428; *Swartz v. Will Starkey Theaters Co.*, 158 Wash. 88, 290 P. (2d) 708; Prosser on Torts, 556, § 90.

It must be remembered, however, that, in deciding whether a statement is merely an expression of opinion or one of fact, the subject matter, form of statement, attendant circumstances, knowledge and position of the parties must be considered. *Holcomb & Hoke Mfg. Co. v. Auto Interurban Co.*, 140 Wash. 581, 250 Pac. 34, 51 A. L. R. 39; *Poe v. Voss*, 196 Va. 821, 86 S. E. (2d) 47.

The fact that statements pertain to the future will not preclude recovery for misrepresentation if such statements were intended and accepted as representations of fact and involved a matter peculiarly within the speaker's knowl-

[3]In regard to the materiality of water supply, see *Gronlund v. Andersson*, 38 Wn. (2d) 60, 227 P. (2d) 741; *Sherman v. Parker*, 104 Wash. 610, 177 Pac. 665; *Smith v. Fletcher*, 102 Wash. 218, 173 Pac 19.

edge, or as to which he professed to have a special knowledge. *Holland Furnace Co. v. Korth, supra*; *Hoptowit v. Brown,* 115 Wash. 661, 198 Pac. 370; *Sherman v. Parker,* 104 Wash. 610, 177 Pac. 665; *Smith v. Fletcher,* 102 Wash. 218, 173 Pac. 19; *Patterson v. Western Loan & Bldg. Co.,* 155 Ore. 140, 62 P. (2d) 946.

Similarly, redress will not be denied where the false promises or predictions involve a misstatement of existing facts, as where a prediction or promise necessarily includes a misstatement of the existing facts on which it is founded, for example, the past experience on which the speaker bases his prediction. *Horowitz v. Kuehl,* 117 Wash. 16, 200 Pac. 570; *Patterson v. Western Loan & Bldg. Co., supra.*

Thus, in the *Horowitz* case, *supra,* the affirmative defense of misrepresentation was sustained where the plaintiff had induced the signing of promissory notes by misstating the past value of a musician's directory and falsely predicting that ninety-five per cent of the musicians would renew their subscriptions without solicitation.

In *Holland Furnace Co. v. Korth, supra,* it was stated that, where a vendor asserts special knowledge and the buyer relies on that knowledge, a statement that an article is appropriate for and will adequately meet the buyer's requirements will be regarded as a representation of fact, despite the contention that this was merely an expression of opinion about something to take place in the future.

It was held in *Sherman v. Parker, supra,* that a buyer of land could rescind the contract where the seller, having relevant facts within his knowledge, had assured him there would be no trouble about water rights, and the buyer subsequently had difficulty in securing the water rights.

Where the purchasers of land sued to rescind the contract of sale on the ground that the vendor had falsely represented that the well and pump *at all times* produced an *adequate* amount of water for household use and for sprinkling purposes, this court granted rescission, calling the statements of the vendor a "misrepresentation of material *facts* by which a purchase of property was intentionally induced." (Italics mine.) *Gronlund v. Andersson, supra.*

Scott grew alfalfa on the land in question and knew that Shook intended to do likewise. When Scott represented that the purchaser, Shook, would have an adequate supply of water, he knew exactly how much water would be required. Shook knew that Scott had this special knowledge both as to Shook's water requirements and as to the water rights to which Shook would be entitled under the covenant running with the land between the landowner and Berto, the owner of the well which supplied the water. Inexperienced in such matters, Shook rightfully relied on Scott's representations which were cloaked with this aura of knowledge. *Holland Furnace Co. v. Korth, supra; Sherman v. Parker, supra.*

However, Scott's representations as to the amount of water to which Shook would be entitled under the landowner's covenant with Berto did not coincide with the fact. The court states, and I agree, that there is sufficient evidence to sustain the finding that Scott represented the capacity of the well at seven hundred fifty gallons per minute. But it is further undisputed that Scott represented that Shook would succeed to the rights under the water contract, and that the *present and existing* terms of such contract were that the owner of the plot of land in question was entitled to one tenth of the well capacity. Based upon these *two* representations of *existing fact*, the capacity of the well and the rights clearly accruing and which allegedly had accrued to Scott under the existing contract, the conclusion inescapably follows that Scott represented as an existing fact that the purchaser of the land in question was entitled to one tenth of seven hundred fifty gallons per minute. There is uncontradicted proof that Shook never received one tenth of seven hundred fifty gallons or even a lesser amount sufficient for his purposes. Such representations were as to existing facts and were demonstrably false.

But the court holds that the occurrence of the represented water supply depended upon future acts of third parties, and, thus, appellant Scott's representations were not of

existing facts. This is in face of undisputed evidence to the contrary. Scott represented existing rights in an existing contract with the well owner. In the prior action by Shook against the well owner, the court determined that the contract was being fully performed, and that the holder of the contract rights (Shook) was receiving everything to which the contract entitled him. The contract was being fully and properly performed by the third party, and yet Shook was not receiving one tenth of the seven hundred fifty gallons per minute. Only two conclusions are possible, and either or both lead to the same result. Either the well capacity was not seven hundred fifty gallons per minute or Shook was not entitled, under the water contract, to the one tenth of the well capacity which Scott had represented to be Shook's rights. In either case, a fact which Scott had represented was shown to be false, and was not rendered false by the failure of a third party to live up to the contract terms. Indeed, it was determined that the third party fully conformed to the provisions, and either the provisions themselves were not as represented or the well capacity did not conform to Scott's representations.

The court's opinion states:

" . . . At best, the statement of Scott can only be construed as a warranty or guaranty that the contract would be performed, and that in its performance, seventy-five gallons per minute, an amount adequate for the plaintiff's needs, would be made available to him. . . ."

But the contract was performed, and, therefore, either the representation as to the existing contract terms was false or the existing referent, the capacity of the well, was not as represented. Neither the capacity of a well nor the substance of an existing contract right depended upon any act of a third party. They exist independently and in themselves. Either or both representations of fact being false justify the rescission.[4]

---

[4]The representation as to the terms of the covenant does not, in my

It was proper, therefore, for the trial court to determine that Shook was not entitled to receive, and did not receive, one tenth of a seven hundred fifty gallon per minute well capacity. Scott had represented that Shook was entitled to receive water in that quantity. It is an indubitable conclusion that Scott misrepresented a present and material fact, either existing contract rights or the existing well capacity, or both.

However, even if the premise were to be accepted that Scott's representations related to future water supply, nevertheless, his superior knowledge, taken in connection with his representations as positive facts, brings this case within a well recognized exception and sustains recovery. *Sherman v. Parker, supra; Holland Furnace Co. v. Korth, supra; Smith v. Fletcher, supra; Van Horn v. O'Connor*, 42 Wash. 513, 85 Pac. 260; *Claus v. Farmers & Stockgrowers State Bank*, 51 Wyo. 45, 63 P. (2d) 781.

In any event, Scott's representations were so intermingled with past events and experience as to require the court to treat the representation as to adequacy of water supply as

---

view, constitute a representation as to the state of the law, but rather a statement, based on actual knowledge, of an existing fact.

However, even if it were deemed that Scott's representation as to the fraction of the well capacity to which the landowner is entitled under the covenant with Berto constituted a representation of law, the misstatement is nevertheless actionable. This court held in *Hobson v. Union Oil Co.*, 187 Wash. 1, 59 P. (2d) 929:

". . . While the general rule is that misrepresentations of law cannot form the basis for an action . . . there are exceptions to the rule and . . . one of them is, as stated in *Prest v. Adams*, 142 Wash. 111, 252 Pac. 686:

"'. . . where one has, or is in position to have, superior knowledge as to what the law is, and makes a positive statement thereon to another's detriment.'"

Accord *White v. Harrigan*, 77 Okla. 123, 186 Pac. 224, 9 A. L. R. 1041; *Jordan v. Stevens*, 51 Me. 78, 81 Am. Dec. 556. The misrepresentation is then treated as a misstatement of fact. Such applies here where Scott clearly had actual and superior knowledge of the covenant's terms and its legal effect.

one of fact, rather than as one of opinion. *Horowitz v. Kuehl, supra.*[5]

(2) Partial failure of consideration, if substantial, justifies rescission, but must go to the root of the contract or be such as to defeat the aims and intentions of the .parties. *Barber v. Rochester*, 52 Wn. (2d) 691, 328 P. (2d) 711; *Knatvold v. Rydman*, 28 Wn. (2d) 178, 182 P. (2d) 9; *Capital Sav. & Loan Ass'n v. Convey*, 175 Wash. 224, 27 P. (2d) 136; *Dishman v. Huetter*, 41 Wash. 626, 84 Pac. 590; *United States v. Haynes School Dist. No. 8*, 102 F. Supp. 843.

Such is the situation here. Shook bought this land solely for agricultural purposes, and, of course, there can be no more important agricultural consideration than the available water supply. The inadequacy of the water supply goes to the very root of the contract; it is unquestionably a most substantial failure of the bargained-for consideration and clearly justifies rescission. It is well settled that bad faith is totally immaterial with respect to rescission based on substantial failure of consideration.

For the reasons above stated, I would affirm the judgment.

FINLEY, OTT, and HUNTER, JJ., concur with FOSTER, J.

---

August 22, 1960. Petition for rehearing denied.

---

[5]"One who fraudulently makes a misrepresentation of fact, *opinion, intention* or law for the purpose of inducing another to act or refrain from action in reliance thereon in a business transaction is liable to the other for the harm caused to him by his justifiable reliance upon the misrepresentation." (Italics mine.) 3 Restatement, Torts, 59, § 525.

"One who fraudulently misrepresents to another that he or a third person *intends* to do or not to do a particular thing is subject to liability under the conditions stated in § 525." (Italics mine.) 3 Restatement, Torts, 69, § 530.

See, also, 3 Restatement, §§ 526, 537, 538, 539, 542, 544.