[No. 25927. *En Banc.* July 22, 1936.]

BYRON HOBSON, *Respondent*, v. UNION OIL COMPANY OF CALIFORNIA, *Appellant*.[1]

[1]Reported in 59 P. (2d) 929.

2

*Stratton & Kane* and *Herbert S. Little* (*Robert L. Palmer,* of counsel), for appellant.

*Cheney & Hutcheson* and *Walter J. Robinson, Jr.,* for respondent.

HOLCOMB, J.—This action, based upon fraud, was tried to the court and a jury, resulting in a verdict and judgment for damages in favor of respondent. This appeal follows the denial of motions by appellant for judgment *non obstante veredicto* and in the alternative for a new trial.

The complaint alleges in substance: That, on or about June 16, 1931, appellant as lessor and respondent as lessee made, executed and acknowledged a written "independent operating lease" whereby appellant leased to respondent certain service station property in Walla Walla, including the buildings and equipment, at a monthly rental of fifty dollars, the lease being for the term commencing July 1, 1931, and ending June 30, 1936; that the only provisions in the lease for its premature termination by the lessor were for nonpayment of rent and accounts owing lessor or the nonperformance of the covenants and conditions specified; that respondent went into possession and operated the service station in accordance with the terms of the lease, conducting a general automobile accessory, greasing, tire, battery, auto top, automobile repairs and gasoline business, all with the knowledge and con-

sent of appellant; that respondent always paid his rental as required by the lease, except that, by a modification agreement, the rental payments were reduced during the autumn months of 1933 to thirty-five dollars a month; that respondent performed all of the other terms and conditions of the lease.

That, in January, 1934, appellant, through its duly authorized agent, negotiated with one Kerr to have him take over the operation of the service station, and that, shortly thereafter, in order to obtain possession of the station property, appellant, through its local manager, Wallace, orally, falsely and fraudulently stated and represented to respondent that his lease was contrary to and in violation of the new United States Petroleum Code adopted pursuant to an act of Congress, and Wallace presented to respondent a new ''agency operating contract'' and a ''super facilities operating agreement,'' and falsely and fraudulently represented to him that, by reason of the petroleum code, it would be necessary for him, if he desired to retain possession of the station property, to execute the new proposed agreement; that respondent, upon excepting to a seven-day cancellation provision contained in the agreements, was falsely and fraudulently informed by appellant's representative that it had no intention of taking advantage of it or to cancel or terminate the new contract, lease or operating agreements.

That, by reason of these representations, respondent was induced to and did, on or about February 6, 1934, execute the document; that respondent had no knowledge of the falsity or fraudulent character of the representations, and, believing and relying thereon, signed the agreements proposed by appellant; that the lease dated June 16, 1931, was executed prior to the adoption of the United States Petroleum Code; that

the term of the new contracts was from January 1, 1934, to June 30, 1936, unless sooner terminated as provided therein; that the terms included:

"(15) Either company or agent (defendant or plaintiff herein) shall have the right at any time during the term of this agreement or any extension or renewal thereof, to terminate this agreement by giving the other party seven (7) days' prior notice in writing of its intention so to do. . . .

"(19) . . . All previous leases, agency or other agreements pertaining to the consignment, purchase and sale of gasoline on the above described premises, now existing between the parties, are hereby canceled.

"(20) This agreement shall not be binding upon Union Oil Company of California unless and until it is approved by its executive committee at Los Angeles, California, executed by the duly authorized officers of said company, and delivered to agent."

That the representations complained of made by appellant's agents and representatives were false and fraudulent, and were known to be so by it and its agents and representatives making them, and were made with intent to, and did, deceive and defraud respondent; that, approximately one month after the execution of the February 6, 1934, contract, appellant's agent Wallace orally, and about March 23, 1934, appellant in writing, notified respondent of the immediate cancellation and termination of the contract of February 6, 1934; that, thereafter, appellant, by Wallace, repeatedly told respondent that, unless he vacated the premises immediately it would have the sheriff throw him out on the street and forcibly dispossess him thereof; that, by reason of such threats and coercion, he did vacate the premises early in April, 1934, and sold his stock of equipment and merchandise at a great sacrifice in order to do so; that,

thereupon, appellant immediately placed Kerr in possession of the station property and leased it to him; that respondent has since demanded delivery of possession of the premises to him, but appellant has failed and refused so to do; that, prior to being dispossessed of the station property, respondent was doing a valuable and profitable business thereon, with a net income of approximately twenty-five hundred dollars per year, and that he has sustained three thousand dollars in damages.

A demurrer to the complaint was overruled.

The answer admits the contract of June 16, 1931; the occupation of the station property by plaintiff; the presenting of a new "agency operating contract" and "super facilities operating agreement" in January, 1934; that the June 16, 1931, contract was executed prior to the adoption of the United States Petroleum Code; the execution by respondent and appellant of the agency operating contract and the super facilities operating agreement of February 6, 1934; the vacation of the station property and the selling by respondent of his stock of equipment and merchandise; that Kerr Motor Company is now in possession; but denied each and all other matter contained in the complaint. By way of affirmative defense, appellant alleges: That respondent voluntarily executed the agreements of February 6, 1934, and operated under them until he vacated; that, about March 23, 1934, appellant notified respondent by registered mail of the cancellation of the agreements of February 6, 1934; that, notwithstanding the seven days notice provision in the agreement expired on or about March 30, 1934, appellant took no steps to compel respondent to vacate the premises, and that, on April 8, 1934, he voluntarily surrendered possession

to one Kerr and sold substantially all of his equipment to Kerr Motor Company.

In reply to the affirmative defense, respondent admitted that he continued in possession of the station premises for a short time after execution of the later contract, but denied all other allegations.

Fourteen assigned errors by appellant are, for convenience and brevity, grouped under four headings: (1) Misrepresentations as to matters of law are not actionable. (2) Future promises are not actionable. (3) The original lease dated June 16, 1931, was not acknowledged by the lessor, and was, therefore, although in writing, merely a month-to-month tenancy terminable by thirty days written notice, or by mutual agreement of the parties. (4) Where there is a voluntary surrendering of possession of the premises, and thus no forcible eviction, there can be no recovery for alleged damages.

The contract of June 16, 1931, will hereinafter be referred to as the first contract and those of February 6, 1934, as the second contracts.

The complaint contains two distinct charges of fraud. The first is that appellant, through its agent Wallace, falsely and fraudulently stated and represented to respondent that the first contract was contrary to and in violation of the new United States Petroleum Code, and that, by reason thereof, respondent would have to sign the second contracts if he desired to retain possession of the premises; and respondent was thereby induced and coerced to and did sign them. The second charge of fraud is that appellant's representatives falsely and fraudulently informed respondent and led him to believe that appellant had no intention of taking advantage of the seven-day cancellation provision in the second con-

tracts, and by reason thereof respondent was induced to and did sign them.

It is first argued that, as to the statements of Wallace about the petroleum code, there were no misrepresentations made which were misleading or false, inasmuch as respondent testified that Wallace only said that the first contract did not "conform" to the code, which, it is contended, was true. The record shows that respondent testified that about the middle of January, Wallace telephoned respondent that he had good news for him—that he had obtained a rental reduction and received instructions from his company that the first contract did not comply with the petroleum code, and they had sent a new lease which they wanted respondent to sign; that, in a later conversation, Wallace said the company wanted their leases "legal with the petroleum code."

Respondent testified that, when Wallace first contacted him in January, 1934, with reference to the new agreements, he told him his lease of June 16, 1931, did not comply with the oil code, and that was the reason he signed the new contracts.

From this and other competent testimony, the jury might find that the impression conveyed and intended to be conveyed by appellant was that the first contract violated the petroleum code and was therefore void, and because of this, respondent signed the second contracts. It is argued, however, that, conceding that Wallace did say in effect that the first contract was void, the statement would be a representation of law which could not be actionable. While the general rule is that misrepresentations of law cannot form the basis for an action for damages, appellant concedes there are exceptions to the rule and that one of them is, as stated in *Prest v. Adams,* 142 Wash. 111, 252 Pac. 686:

" . . . where one has, or is in position to have,

superior knowledge as to what the law is, and makes a positive statement thereon to another's detriment.''

Appellant argues that this exception to the rule has no application, inasmuch as Wallace was without legal training and had no superior knowledge of law. But Wallace was speaking as and for the company. Respondent testified that Wallace told him ''he got instructions for a new lease from the company advising him my [respondent's] old lease didn't comply with the petroleum code. . . .'' It was the company asserting the knowledge of law, and not Wallace personally; and whether or not the company was in a position to have superior knowledge of the law, as asserted, was for the jury, as was also the question of whether respondent relied upon the statements made by Wallace, even though respondent did solicit advice of an attorney, which he failed to get.

The effect of an unsuccessful investigation is stated in 1 Page on Contracts, § 331, as follows:

''If a partial investigation is made which from its nature can not and does not disclose the falsity of the statements made, and the original statement is relied on, as not being contradicted by such investigation, the weight of modern authority is that fraud can exist.''

We come now to the contention that future promises are not actionable. This refers to the charge that appellant's representatives falsely and fraudulently led respondent to believe that appellant had no intention of taking advantage of the seven-day cancellation provision in the second contracts, and, by reason thereof, respondent was induced to and did sign the same. Respondent testified that one Golding, district sales manager of appellant, made the statement to him:

''You have been here almost three years and I do

not see any reason why you should not stay here the full term,''

to which respondent replied: ''If you feel that way about it I will sign it.''

Appellant argues that, as these statements are true, and as no attempt was made to show that Golding ever intended anything to the contrary, there was no proof of any dishonest expression, and hence, there could be no cause of action premised thereon, quoting 26 C. J. 1087:

''An actionable representation must relate to past or existing facts and cannot consist of mere broken promises, unfulfilled predictions, or erroneous conjectures as to future events. Predictions as to future events are ordinarily regarded as nonactionable expressions of opinion upon which there is no right to rely, and obviously cannot constitute fraud where made in the honest belief that they will prove correct.''

Counsel notes an exception to this general rule, which they quote from 26 C. J. 1093, as follows:

''Since the state of a man's mind is as much a fact as the state of his digestion, the weight of authority holds that if the falsity of the statement can be established, the misrepresentation of opinion, belief, or intent is an actionable representation of fact. This redress may be had for the dishonest expression of an opinion contrary to that really entertained by the speaker, . . .''

It may be said of Golding as we said of Wallace, he was speaking as and for the company. There was evidence of some dissatisfaction in the quantity of appellant's products sold by respondent, of his failure to build up his gasoline sales, and at least a hint of unfriendliness between Wallace and respondent. There was evidence, also, of Kerr, who went to Walla Walla to take over the Ford agency, and who later took over respondent's station property, being

approached by Wallace as early as January, 1934, in an endeavor to get his business; and about the middle of February, Wallace inquired of Kerr if he would consider leasing this station, at about which time Kerr was led to believe that he could have it. Further, there was the notice dated March 23, 1934, terminating the contracts, which was not long after the second contracts were executed. Certainly, there was evidence of facts and circumstances from which the jury had the right to conclude an intention contrary to that inferred from the statement, ''I do not see any reason why you should not stay here the full term.''

■ It is asserted that the introduction of parol evidence which had the effect of varying or nullifying a definite unambiguous provision of the written contracts was in violation of the parol evidence rule, as to which appellant quotes from 22 C. J. 1217:

''But where a written contract, which a party seeks to rescind on the ground of the oral fraudulent representations of the other party, contains provisions negativing the claim that the representations were relied on, or contains other representations on the same subject inconsistent with the alleged oral representations, the oral representations are inadmissible, as varying the contract.''

In support of this rule the case of *Kreshover v. Berger,* 62 Misc. 613, 116 N. Y. Supp. 20, is quoted, but this is not the generally accepted rule. Practically no cases are cited under the annotations to Corpus Juris, and the New York case has never been relied upon as an authority for the rule; in fact, in New York the rule seems to be otherwise.

3 Abbott's Trial Evidence (4th ed.), § 1076 (not cited), says:

''The rule excluding evidence contradictory of a written instrument, does not apply when fraud is the gravamen of the action or gist of the defense. Oral

evidence of misrepresentations, though not usually admissible to show the meaning of an instrument embodying a contract is admissible to show the intent of the parties, and the deceit by which assent was obtained, and to show what would have been covered by the terms of the instrument if the representations had been true; and the relation of the parties, under which the instrument was made, may be shown, not to vary its terms, but to show the defendant's liability in respect to the transaction.''

In *O'Connor v. Lighthizer*, 34 Wash. 152, 75 Pac. 643, we said:

''It is urged that the defense presents a case of an attempt to contradict and vary the terms of a written instrument, and that it is apparent from the face of the pleading that proof thereof must be made by parol testimony. Whatever may be said of the averments of the pleading as to a contract different from that stated in the writing, it nevertheless does state that the contract was induced by fraud. If so, it was void from the beginning, it never became a contract, and parol proof is permissible to establish the fraud.

'' 'In other words, while parol evidence is inadmissible to vary or contradict the terms of a written instrument, such evidence is admissible to show that a writing in the form of a contract never became operative as a contract. This principle is generally approved by the authorities.' *Reiner v. Crawford*, 23 Wash. 669, 671, 63 Pac. 516, 83 Am. St. 848.

''Many authorities are cited in support of the above. In that case it was held, that oral evidence was admissible to show that a writing in the form of a contract was subject to a condition precedent to the attaching of any obligation thereunder; that, if the condition precedent failed, there was in fact no contract; and that such oral testimony did not vary the terms of any contract. The rule is equally as applicable here where the effect of the pleading is to aver that no contract ever existed because of fraud. Oral proof of fraud does not vary the terms of a valid written instrument, when the instrument involved was induced by fraud, and therefore never became a valid or operative one.''

Again, in *Lilienthal v. Herren,* 42 Wash. 209, 84 Pac. 829, we said:

"Appellants contend further that the court erred in receiving evidence of conversations prior to the making of the contract, which evidence had the effect to contradict or vary the terms of the contract. This is the general rule, where the contract is in writing and where a party seeks to avoid or change the terms of it and no fraud is alleged. But,

" 'The fact that a contract has been reduced to writing, or that there are written warranties, is no ground for excluding parol evidence that one of the parties was induced to enter into the same by false and fraudulent representations of the other, though the writing is silent on the subject to which the representations relate; for it is a well-settled exception to the general rule excluding parol evidence to vary or change a written contract, that such evidence may be received for the purpose of showing fraud.' 14 Am. & Eng. Ency. Law (2d ed.), p. 199, and cases cited."

In *Farley v. Letterman,* 87 Wash. 641, 152 Pac. 515, we said:

"In all cases where a person has fraudulently procured the execution of a writing by another, or induced him to affix his signature to an instrument which by reason of fraud fails to express the true contract of the parties, it is competent to go behind the language used therein, and the party defrauded may show any facts or circumstances, though contrary to the terms of the writing, which will prove the fraud alleged. 9 Ency. Evidence, 335; *Griffith v. Strand,* 19 Wash. 686, 54 Pac. 613."

See, also, *Flint v. Owl Land & Inv. Co.,* 122 Wash. 401, 210 Pac. 811.

■ It is next urged that the first lease was not acknowledged by the lessor and was therefore only a month-to-month tenancy terminable by thirty days' written notice or by mutual agreement of the parties. We are unable to conceive how this contention can be

made either to defeat recovery by respondent or to reduce the damages. If it be conceded that the first contract could have been so terminated, no attempt was ever made to so end it, either by written notice or mutual agreement. It would be unconscionable to say that one could defeat the force and effect of a contract merely because it might legally have been terminated by the party, but was not because the party had made a fraudulent contract intended to displace or be a substitute for it.

The final contention is that there was a voluntary surrender of possession of the service station property, consequently no forcible eviction, and that, therefore, there can be no recovery for damages.

"The question of eviction depends upon the circumstances, and is in all cases a question of fact." 2 Thompson on Real Property, § 1246.

One instruction reads:

"You are further instructed, members of the jury, that if you find that the plaintiff voluntarily surrendered possession of said premises to the Kerr Motor Company, either under an arrangement with the said Kerr Motor Company or with the defendant, and was not at any time forcibly evicted from said premises by the defendant, then you must find that the plaintiff is not entitled to recover any damages against the defendant."

This instruction should not and does not direct that any arrangement to surrender makes the surrender voluntary. If one involuntarily surrenders possession of real property, but without waiting for physical eviction, he is most apt to make as favorable arrangements as possible, but, nevertheless, the surrender would still be involuntary. It suffices to say that there is ample evidence of facts and circumstances

14

from which the jury could find that the surrender was involuntary.

There is no error, and the judgment is affirmed.

MILLARD, C. J., TOLMAN, MAIN, MITCHELL, BLAKE, BEALS, and GERAGHTY, JJ., concur.

STEINERT, J. (dissenting)—The record shows that, when the new lease, modifying the original one, was first presented to respondent, he refused to sign it because it contained the seven-day cancellation clause. Later, after submitting the new lease to his own attorney, respondent agreed to, and did, sign it. In other words, before entering into the lease of which he now complains, he had knowledge of the seven-day cancellation clause and, after consulting his attorney, accepted its terms. His only excuse now is that it was represented to him that the cancellation clause would not be enforced.

If written instruments, deliberately signed by parties with knowledge of their terms and conditions, can be upset upon such a contention as this, then written instruments are futile, and to execute them is but a waste of time. I dissent.