IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | |
|---|---|
| ERIC W. ALLEN, | No. 88215-5-I |
| Appellant, | |
| v. | |
| STATE OF WASHINGTON DIRECTOR OF THE DEPARTMENT OF LABOR & INDUSTRIES, | UNPUBLISHED OPINION |
| Respondent. | |

BOWMAN, J. — Eric Allen, representing himself, appeals the superior court's findings of fact, conclusions of law, and judgment affirming the Department of Labor and Industries (DLI) director's determination that Allen was not fired in retaliation for exercising his right to paid sick leave under the Washington Minimum Wage Act (MWA), chapter 49.46 RCW. Allen argues DLI erred by applying the wrong legal standards, ignoring key evidence, conducting an arbitrary investigation, and violating due process. Finding no error, we affirm.

FACTS

Taylor Farms Northwest LLC d/b/a Real Foods of Seattle LLC (Taylor Farms) is a food production facility that sells prepackaged food to grocery stores and other businesses. Allen worked for Taylor Farms as a mechanic, repairing and maintaining food manufacturing equipment. Philip Zurcher supervised Allen

and the other mechanics.  Zurcher communicated with Allen via e-mail, through text messages, face-to-face, or over a radio.

Taylor Farms' written attendance policy, which Allen signed in October 2020, stated that "early departure" that "is not approved by a member of the management team . . . will be considered job abandonment."  From February through May 2022, Allen failed to follow the proper notification procedure for early departures, full day absences, and tardiness on nine occasions.  During this time, Zurcher verbally warned Allen about leaving early without following policy and told him it "would be dealt with differently the next time."

On May 18, 2022, Allen left work four hours early because of illness.  Allen told a coworker that he was leaving but did not notify a supervisor or manager.[1]  Later that evening, Zurcher contacted Allen by text to find out what was going on.  Allen did not respond because he had blocked Zurcher's phone number.

Allen was not scheduled to work on May 19 or 20.  When he returned to work on May 21, 2022, Zurcher told Allen that he had been terminated from his job.  Taylor Farms paid Allen the entire balance of his accrued paid time-off in his final paycheck.

In September 2022, Allen filed a retaliation complaint against Taylor Farms under the MWA, alleging that he was "[t]erminated for excessive sick leave use."  DLI assigned the complaint to investigator and industrial relations agent Michelle Darin.  Allen told Darin that Zurcher said he was " 'being terminated for using excessive amounts of [paid sick leave] and it won't be

---

[1] Allen submitted a request to use sick leave for the hours he missed.  But that form goes through Taylor Farms' payroll portal, so his supervisor did not see it.

2

tolerated.' " Allen also asserted he "was told in the past he didn't need to let anyone know" when he left early and he "just [needed to] fill out a sick leave slip when he returned." In response, Taylor Farms explained that it terminated Allen for violating company policy by leaving work early on several occasions without notifying a supervisor or manager, not for using "excessive amounts" of paid sick leave.

In November 2022, Darin concluded that the evidence supported Taylor Farms' assertion that Allen was terminated for leaving work early without notifying a supervisor or manager rather than for exercising his right to use paid sick leave. On April 20, 2023, based on the investigator's recommendation, DLI issued a "Determination of Compliance," concluding that Taylor Farms did not violate MWA retaliation protections when it terminated Allen's employment. Allen appealed to the Office of Administrative Hearings (OAH).

In February 2024, an OAH administrative law judge (ALJ) heard testimony from the parties and considered several exhibits. On April 4, the ALJ issued an initial order, affirming the Determination of Compliance. The ALJ found "by a preponderance of the evidence that [Taylor Farms] discharged Mr. Allen for violating its reasonable notice policy and not for alleged abuse of paid time off." The ALJ concluded:

> Here, [Taylor Farms] discharged Mr. Allen on his next scheduled day of work after he exercised his right to paid time off. However, the basis for [Taylor Farms]' action was Mr. Allen's violation of its reasonable notice policy. Mr. Allen was advised in writing of this policy at hire. More specifically, he was advised that failing to notify management before he left work early would be considered job abandonment. He was reminded of this policy verbally when he violated it more than once shortly before he did so again on May

3

18. Finally, he refused to respond to his supervisor's inquiry on May 18 about his status after he left. Accordingly, [Taylor Farms] has met its burden to produce a legitimate non-pretextual non-retaliatory reason for its decision to discharge. Therefore, Mr. Allen is unable to meet his burden to prove retaliation.

Allen petitioned the DLI director for administrative review. On September 3, 2024, the director adopted the ALJ's findings of fact and conclusions of law and issued a final order affirming the Determination of Compliance.

Allen then petitioned the superior court for judicial review. On May 2, 2025, the superior court entered findings of fact, conclusions of law, and judgment, affirming the director's order.

Allen appeals.

ANALYSIS

Allen argues DLI erred by applying the wrong legal standards, ignoring key evidence, conducting an arbitrary investigation, and violating due process. We address Allen's arguments below.

1. Standard of Review

The Administrative Procedure Act (APA), chapter 34.05 RCW, governs judicial review of agency decisions, including decisions of DLI. RCW 34.05.510; *Glacier Nw., Inc. v. Dep't of Lab. & Indus.*, 32 Wn. App. 2d 189, 195, 555 P.3d 896 (2024). We review the director's order, sitting in the same position as the superior court and applying the APA standards directly to the agency record. *Silverstreak, Inc. v. Dep't of Lab. & Indus.*, 125 Wn. App. 202, 208, 104 P.3d 699 (2005); *see* RCW 49.48.084(4); WAC 296-128-800(8). As the party challenging an agency action, Allen bears the burden of showing the action is invalid. RCW

34.05.570(1)(a).  Pro se litigants are bound by the same rules of procedure and substantive law as licensed attorneys.  *Holder v. City of Vancouver*, 136 Wn. App. 104, 106, 147 P.3d 641 (2006).

We review administrative findings of fact for substantial evidence, and unchallenged findings are verities on appeal.  *Darkenwald v. Emp't Sec. Dep't*, 183 Wn.2d 237, 244, 350 P.3d 647 (2015).  "Substantial evidence" is "evidence sufficient to persuade a fair-minded, rational person of the truth of the matter."  *R & G Probst v. Dep't of Lab. & Indus.*, 121 Wn. App. 288, 293, 88 P.3d 413 (2004).  "Whether an employee's behavior constitutes misconduct, warranting termination, is a mixed question of law and fact."  *Smith v. Emp't Sec. Dep't*, 155 Wn. App. 24, 33, 226 P.3d 263 (2010).

Under the APA, "we may grant relief from an agency order for any one of [the] nine reasons set forth in RCW 34.05.570(3)."  *Am. Fed'n of Teachers, Local 1950 v. Pub. Emp't Rels. Comm'n*, 18 Wn. App. 2d 914, 921, 493 P.3d 1212 (2021).  Relevant here, we may reverse the director's order if the agency erroneously interpreted or applied the law, substantial evidence does not support the order, the order conflicts with an agency rule, or the order was arbitrary or capricious.  RCW 34.05.570(3)(d),(e), (h), (i).

Whether the agency decision contains a legal error is a question of law reviewed de novo.  *Kittitas County v. E. Wash. Growth Mgmt. Hr'gs Bd.*, 172 Wn.2d 144, 155, 256 P.3d 1193 (2011).  "An agency's decision is arbitrary and capricious if the decision is 'willfully unreasonable, without consideration and in disregard of facts or circumstances.' "  *DeFelice v. Emp't Sec. Dep't*, 187 Wn.

App. 779, 787-88, 351 P.3d 197 (2015) (quoting *W. Ports Transp., Inc. v. Emp't Sec. Dep't*, 110 Wn. App. 440, 450, 41 P.3d 510 (2002)).

2. <u>MWA</u>

Under the MWA, "[a]n employer may not discriminate or retaliate against an employee for . . . the use of paid sick leave." RCW 49.46.210(4). "Retaliation" includes any effort by an employer to "interfere with, restrain, or deny the exercise of any employee right provided under or in connection with" the MWA. WAC 296-128-770(1). "This means an employer may not use an employee's exercise of any of the rights provided under [the MWA] as a negative factor in any employment action such as . . . termination." *Id.* Further, it is unlawful for an employer to "adopt or enforce any policy that counts the use of paid sick leave" as a basis for employee discipline or to "take any adverse action against an employee" for exercising their right to paid sick leave under the MWA. WAC 296-128-770(2), (3).

To establish a prima facie case for retaliatory discharge under the MWA, Allen must show (1) he exercised a statutory right, (2) Taylor Farms terminated his employment, and (3) there was a causal connection between Allen's exercise of his right and the adverse employment decision. *See Wilmot v. Kaiser Alum. & Chem. Corp.*, 118 Wn.2d 46, 68-69, 821 P.2d 18 (1991) (alleging wrongful discharge in retaliation for pursuing statutory workers' compensation benefits). To prove causation, a plaintiff must show that retaliation was a "substantial factor" motivating the employer's adverse action. *Cornwell v. Microsoft Corp.*, 192 Wn.2d 403, 412-13, 430 P.3d 229 (2018). Retaliation need not be the main

6

reason.  *Currier v. Northland Servs., Inc.*, 182 Wn. App. 733, 746, 332 P.3d 1006 (2014).  Causation may be inferred from circumstantial evidence, such as the proximity in time between the protected action and the allegedly retaliatory decision.  *Wilmot*, 118 Wn.2d at 68-69.  However, "opposition to an employer's possible discrimination does not enjoy absolute immunity; an employee may still be terminated for proper cause even when engaged in protected activity."  *Kahn v. Salerno*, 90 Wn. App. 110, 129, 951 P.2d 321 (1998).

If the employee establishes a prima facie case, the burden shifts to the employer to show a legitimate nondiscriminatory reason for the employment decision.  *Wilmot*, 118 Wn.2d at 70.  The employer "need not do so by the preponderance of evidence necessary to sustain the burden of persuasion . . . because the employer does not have that burden."  *Id.*  If the employer rebuts the employee's claim, then the burden shifts back to the employee to prove that the employer's reason was pretextual.  *Currier v. Northland Servs., Inc.*, 182 Wn. App. 733, 743, 332 P.3d 1006 (2014).

Allen argues that the director erred in finding no retaliation when Taylor Farms terminated his employment three days after he exercised his statutory right to use paid sick leave.  We disagree.

Although Taylor Farms fired Allen three days after he exercised his statutory right to paid sick leave, substantial evidence supports the finding that Taylor Farms discharged him "for violating its reasonable notice policy and not

for alleged abuse of paid time off."[2]  Allen had a documented history of leaving work early without notifying a supervisor or manager despite his signed acknowledgement of Taylor Farms' departure policy.  Zurcher testified that he verbally warned Allen there would be different consequences if it happened again.  Despite this, Allen again left work early without telling anyone in management.  And Allen did not respond to Zurcher's follow-up text asking what was going on because he had blocked Zurcher's number.

The director properly concluded that Taylor Farms "met its burden to produce a legitimate non-pretextual non-retaliatory reason for its decision to discharge" Allen.

A.  Sick Leave Use and DLI's Investigation

Still, Allen argues the record contains "overwhelming evidence" that his use of sick leave was a substantial factor in his termination.  He further argues DLI's investigation and determination were arbitrary and capricious because it failed to address conflicting evidence, refused to interview known witnesses, and accepted Taylor Farms' shifting explanations without reconciling material contradictions.  We disagree.

Allen insists Zurcher told him that Taylor Farms was terminating him for excessive use of paid sick leave.  He contends that DLI "inexplicably disregarded" this "smoking gun" evidence linking the adverse employment action

---

[2] Although Allen did not assign error to any findings of fact as RAP 10.3(g) requires, his arguments implicitly challenge this finding.  We may waive technical violations of the rules if the issues are reasonably clear from the arguments in the brief, the opposing party has not been prejudiced, and the court has not been greatly inconvenienced.  *In re Dependency of H.W.*, 34 Wn. App. 2d 819, 827-28, 572 P.3d 481 (2025); RAP 1.2(a).

to his exercise of statutorily protected rights. But Zurcher denied saying this. To the contrary, Zurcher said that Taylor Farms terminated Allen because he failed to follow early departure procedures and "basically abandoned his job." Although Allen recalls the conversation differently, we must "defer to the trier of fact on issues involving conflicting testimony, credibility of the witnesses, and the persuasiveness of the evidence." *McCoy v. Kent Nursery, Inc.*, 163 Wn. App. 744, 769, 260 P.3d 967 (2011).

Allen also claims DLI made no effort to interview his coworker, Daniel Dahner, who allegedly witnessed the termination conversation. But the record shows that DLI tried to contact Dahner and told Allen that it could not reach him. So, Allen has not shown that DLI was willfully unreasonable. In any event, Allen could have called Dahner as a witness for the evidentiary hearing but did not do so.

Next, Allen points to a March 24, 2021, text he received from Taylor Farms' human resources division, stating, "Be sure to fill out Paid Sick Leave form when you return. . . . No need to get approved by [a manager or supervisor], turn into [human resources]." Allen contends that this written instruction contradicts Taylor Farms' claim that he violated notification procedures by failing to tell a supervisor that he was leaving early. And he argues that Taylor Farms maintained confusing and contradictory notification policies and selectively enforced the strictest policy against him after using sick leave, creating a "de facto obstacle" to exercising his statutory rights.

9

The record does not support Allen's characterization of Taylor Farms' notification policy as confusing or unreasonably difficult to use. Theresa Bigelow, the human resources payroll manager for Taylor Farms, testified that the March 24 text pertained to Taylor Farms' procedure for submitting a sick leave form to get paid for time off, not to the requirement to notify management when leaving early. Zurcher also testified that Taylor Farms would never authorize an employee to leave work early without notifying management because it could create significant safety problems.

Allen next argues that the record "documents a hostile work environment and discriminatory pattern" that shows Taylor Farms' stated reasons for his termination were pretextual. Allen claims that he filed several complaints with human resources about Zurcher's behavior before he was terminated and that he was "the second minority to be terminated." But again, substantial evidence shows that Taylor Farms terminated Allen for failing to follow its reasonable notification policy. Allen's unsubstantiated assertions are insufficient to meet his burden to prove that Taylor Farms' reason was pretextual.

Allen further asserts that DLI's determination was arbitrary and capricious because it conflicts with the Employment Security Department's (ESD's) independent finding that his actions did not amount to misconduct. But RCW 50.32.097 provides that findings, determinations, conclusions, or final orders issued by ESD "shall not be conclusive, nor binding, nor admissible as evidence in any separate action outside the scope of Title 50 RCW between an individual and the individual's employer." DLI did not err in disregarding such evidence.

Allen also argues that DLI erred by failing to apply the liberal construction standards of the Washington Law Against Discrimination (WLAD), chapter 49.60 RCW, particularly when viewed in light of the MWA's prohibition on interference with protected sick leave rights. *See State v. City of Sunnyside*, 3 Wn.3d 279, 316, 550 P.3d 31 (2024) ("The WLAD demands liberal construction in order to effectuate its purposes of preventing and eliminating discrimination."). He contends that these principles required DLI to construe the evidence in his favor. He is incorrect.

Allen conflates WLAD with DLI's limited authority to investigate alleged violations of the MWA. *See* WAC 296-128-780(1) ("An employee who believes that they were subject to retaliation by their employer . . . for the exercise of any employee right under [the MWA] . . . may file a complaint with [DLI]."). WLAD complaints must be filed with the Human Rights Commission, not DLI. RCW 49.60.230(1)(a). More fundamentally, principles of statutory construction do not apply when a court reviews the sufficiency of the evidence to support the fact-finder's decision. *City of Bellevue v. Raum*, 171 Wn. App. 124, 155 n.28, 286 P.3d 695 (2012).

Substantial evidence supports the director's determination that Taylor Farms did not violate MWA retaliation protections when it terminated Allen.

B.  Due Process

Allen makes several due process violation allegations. We address his arguments below.

For the first time on appeal, Allen contends that OAH's remote hearing format violated his due process rights because it had technical problems that prevented him from "presenting his case and building a complete record." We will generally not review arguments raised for the first time on appeal. RAP 2.5(a). But we may review questions of manifest constitutional magnitude raised for the first time on appeal. *State v. Kirkman*, 159 Wn.2d 918, 934, 155 P.3d 125 (2007). "Manifest" error "requires a showing of actual prejudice." *Id.* at 935.

First, Allen characterizes the remote hearing as a "constant stream" of "malfunctioning proceedings" where " '*everything blacked out*.' " But the transcript does not reflect Allen's characterizations of the hearing. Specifically, Allen claims that he was unable to effectively cross-examine Bigelow. Although Bigelow had audio problems when she first joined the remote hearing, the record shows the ALJ quickly resolved the issue, and Bigelow responded to the only question Allen asked her. This did not prejudice Allen.

Allen also complains that his unlawful termination rendered him unable to afford legal representation and "further compound[ed] the due process violation." But again, it is well established that "[c]ourts hold pro se litigants to the same standards as attorneys." *Winter v. Dep't of Soc. & Health Servs.*, 12 Wn. App. 2d 815, 844, 460 P.3d 667 (2020). And there is no right to appointment of counsel at public expense for Allen's claim. *See In re Dependency of Grove*, 127 Wn.2d 221, 240, 897 P.2d 1252 (1995) ("no constitutional right to appeal at public expense in civil cases in which only property or financial interests are threatened").

Finally, Allen claims the ALJ violated due process by sustaining an objection that prevented him from presenting evidence of retaliatory motive. But the objection properly related to Allen's attempt to offer his own testimony while cross-examining a witness. The ALJ sustained the objection and reminded Allen that he would have a chance to "tell us everything you think we need to know . . . as long as, of course, it's relevant." Allen has not shown manifest constitutional error.

In sum, because substantial evidence supports the director's determination that Taylor Farms did not violate MWA retaliation protections when it terminated Allen and Allen shows no manifest due process violations, we affirm.

_____, ACJ

WE CONCUR:

_____        _____
Chung, J.                       Coburn, J.